**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JERRY EARL GRANBERRY, SR., | ) | CASE NO. 4:24 CV 2126 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| DANIEL HAUETER, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

This case is before the Court on remand from the Sixth Circuit Court of Appeals to determine if Plaintiff should be permitted to amend his Complaint to avoid the Court's dismissal under 28 U.S.C. § 1915(e). Although the allegations in Plaintiff's Complaint consisted of only two sentences, which appeared to attack a state court conviction in a civil rights action, the Court, out of an abundance of caution, granted him leave to file an Amended Complaint. Instead of filing an Amended Complaint, however, Plaintiff submitted 60 pages of documents in the form of a letter which he indicated was his response to the Court's leave to file an Amended Complaint. (Doc. No. 12-1 at PageID #: 44, ¶3). Of those 60 pages, only 6 pages could be construed as an attempt at filing an amended pleading. (Doc. No. 12-1 at PageID #: 45-48). The remaining 54 pages appear to be documents he filed in his state criminal case. The Court construed this letter as his Amended Complaint. (Doc. No. 13). To date, Plaintiff has not filed any other document specifically labeled as an Amended Complaint.

## I. Background

Plaintiff was arrested on October 6, 2022 after responding to an undercover detective's online post advertising the prostitution services of a mother-daughter escort pair. *State v. Granberry*, No. 24 CO 0008, 2025 WL 290201 at *1-3 (Ohio App. 7 Dist, Jan. 15, 2025). That detective, identified as Daniel Haueter in the appeal of his post-conviction petition, was a member of the Mahoning Valley Human Trafficking Task Force. *Id.*; *State v. Granberry*, No. 25 CO 0004, 2025 WL 2336912 at *1 (Ohio App. 7 Dist, Aug. 13, 2025) The Ohio Seventh District Court of Appeals statement of the criminal case helps to give context to Plaintiff's limited allegations and claims:

> In the fall of 2022, the detective posted an ad on a website called skipthegames.com, which he said was commonly used to find sex for hire from prostitutes or escorts. When advertising during a sting operation involving a juvenile sex worker, the detective does not initially specify age or sexual services, as he believes this would cause service seekers to suspect a law enforcement sting. After a potential client texts to request services, the detective reveals the juvenile's age early in the conversation to avoid a perceived "bond" forming before finding out the juvenile is under sixteen; he hopes the would-be client will back out after the age of the juvenile is disclosed.
>
> The subject ad was posted in the "Female escort" category with the tagline, "M and D incall ***** if ya know ya know *****." (Asterisks original.) This was followed by the poster's age of 35. The detective explained the terminology: M and D referred to mother and daughter; incall meant the client must come to them; and the last phrase reinforced the idea that the phrase "M and D" had a significant, secretive meaning.
>
> Three photographs were displayed in the ad. The first showed an adult female posing next to a girl with brown hair (who appeared to a young teenager or preteen); the girl was holding the camera, showing she was taking a joint selfie using a mirror. The second photograph depicted the same woman posing with a girl with blonde hair (who appeared to be a young teenager or preteen). The third photograph contained only one subject, a seemingly different teenage girl with blonde hair pulled back.
>
> After the photographs, the detective provided responses to standard categories, such as accepted payment method ("Cash"), hours ("24/7"), and breasts ("Wow"). Next, the ad said,

READ don't waste your time or ours.
* Incall only. You don’t need pics. If you ask gonna assume your window shopping and not serious and the convo ends. No exceptions
* * We are what you think we are. So not for everyone, if ya know ya know.
Don’t waste our time if ya ain't feeling the vibe.
Don't judge us and we won’t judge you.
Be respectful

The website also displayed a “call me” icon. When clicked, the entry of a captcha is required in order to obtain the phone number (which the detective obtained specifically for this ad). On September 28, 2022, Appellant's phone texted the number in the ad to ask, “A[r]e yall available” followed an hour later by “??” After Appellant texted the question marks, the detective responded, “Yep.” Appellant replied, “I'm ready now I wanted about 30 minutes if possible.” The conversation stopped after the detective explained, “East Palestine incall.”

Eight days later, on the morning of October 6, 2022, Appellant asked, “Are yall available this morning?” After hours went by with no response, Appellant again asked, “Are yall available?” In reply, the detective asked, “U know what our sf is about right” to which Appellant said, “Yes.” The detective asked where Appellant was coming from, and Appellant asked where they would meet. The detective reminded Appellant the incall location was East Palestine. Appellant said he could arrive in 25 minutes and asked for a more specific location. Appellant was told to send a screen shot of his GPS location after which a neighboring address would be provided followed by the final address; he was told this procedure was used “to weed out no shows.”

The detective also texted, “I'm 36 she's not 18 yet so if you ain't into that I can only book ya for me. Sorry.” Appellant responded, “Good with both.” The detective then further explained, “I'm 36 she's 15 I'm not a bad person we just do this for the money and she's cool with it and keeps her own money” and then, “I'm Mya she's Katie.” Appellant said, “Ok nice to meet you.”

The detective asked, “What did ya want for rate” and “What want cuz need to know if ya even got enough?” Appellant replied, “A 1/2 hour with yall.”

The detective inquired, “Full service or something else?” When Appellant said, “Yes,” the detective further inquired, “Uh ... which ding ding?” Appellant specified, “Full service.” The detective then provided a rate quote, “Full is 180 hh 240 hr raincoats needed with her.” Appellant responded, “Ok.” According to the detective's testimony, full service means a combination of oral and vaginal sex but not anal sex and a raincoat is a condom.

Over the next minutes, Appellant sent a screen shot of his GPS location, received a store address in East Palestine, and then received a specific house location with a notation about the porch light. When Appellant arrived at the house, a waiting

> police officer in a patrol car placed Appellant under arrest. The testimony of this police officer confirmed the detective's testimony that Appellant was carrying on his person $180 in cash and one condom. In addition, this officer recovered Appellant's phone from under the driver's seat after the detective called the phone.

*State v. Granberry*, No. 24 CO 0008, 2025 WL 290201 at *1-3 (Ohio App. 7 Dist, Jan. 15, 2025). This narrative is confirmed in more graphic terms in the Mahoning County Human Trafficking Task Force Investigative Report which Plaintiff included with the documents the Court construed as his Amended Complaint. (Doc. No. 12-1 PageID #: 57-60).

Plaintiff does not appear to dispute these facts, but indicates that the date of his arrest was August 6, 2022, rather than October 6, 2022 as reported by the Appellate Court. (Doc. No. 12-1 at PageID #: 45). The police reports and the state court documents confirm that he was arrested in October 2022. (Doc. No. 12-1 at PageID #: 52-74). He states that when he turned the corner onto the street for the address he was given, Officer Elkin was standing in the roadway with his firearm pointed at Plaintiff. (Doc. No. 12-1 at PageID #: 45). Officer Elkin ordered Plaintiff to exit the vehicle and arrested him. (Doc. No. 12-1 at PageID #: 45). He contends he was searched by Officer Elkin and was then placed in Officer Weingart's patrol car. (Doc. No. 12-1 at PageID #: 45). He states that money was taken from his wallet during this pat down. (Doc. No. 12-1 at PageID #: 45). He claims that Officers Elkin and Weingart then searched his vehicle. (Doc. No. 12-1 at PageID #: 45). He states that during the search, his cell phone received a call. (Doc. No. 12-1 at PageID #: 45). Officer Elkin was able to locate the phone and reached between the seats to retrieve it. Once it was in his possession, Officer Elkin began to scroll through it. (Doc. No. 12-1 at PageID #: 45). He states that Officer Elkin read messages aloud to Detective Haueter who apparently was the person who placed the call to Plaintiff's cell

phone. (Doc. No. 12-1 at PageID #: 45). The Officers also found a condom. (Doc. No. 12-1 at PageID #: 45).

Plaintiff was indicted by a Columbiana County Grand Jury on February 8, 2023 and charged with compelling prostitution (a third-degree felony), attempted unlawful sexual conduct with a minor (a fourth-degree felony where the offender is 10 or more years older), engaging in prostitution (a first-degree misdemeanor), and possession of criminal tools (a fifth-degree felony where the device is intended for use in a felony). *State v. Granberry*, No. 24 CO 0008, 2025 WL 290201 at *1-3 (Ohio App. 7 Dist, Jan. 15, 2025). A charge of importuning (count one) was dismissed by the state prior to trial. *Id.* Plaintiff waived his right to a jury trial. The matter proceeded to a bench trial on August 23, 2023, where the court found him guilty as charged. The court sentenced him to 15 months in prison for attempted unlawful sexual conduct with a minor and lesser concurrent offenses. *State v. Granberry*, No. 25 CO 0004, 2025 WL 2336912 at *1 (Ohio App. 7 Dist, Aug. 13, 2025).

Plaintiff filed a timely appeal of his conviction, asserting multiple claims of insufficiency of the evidence. *State v. Granberry*, No. 24 CO 0008, 2025 WL 290201 (Ohio App. 7 Dist, Jan. 15, 2025). The Ohio Appellate Court addressed every ground for relief, found they had no merit, and affirmed his conviction on January 15, 2025. *Id.* While his appeal was pending, he also filed a Petition for Post-Conviction Relief with the trial court. He claimed that the state did not provide him with all of the evidence, tampered with evidence, and committed Brady violations. The trial court denied the Petition on the grounds that it was barred by *res judicata*, stating that it could and should have been raised at trial and on direct appeal. The Ohio Seventh District Court of Appeals affirmed that decision. *State v. Granberry*, No. 25 CO 0004, 2025 WL 2336912 at *1 (Ohio App. 7 Dist, Aug. 13, 2025).

While his direct appeal and his Post-Conviction Petition were pending in state court, Plaintiff filed this civil rights action in federal court on December 9, 2024. His Complaint was very brief. In its entirety, his Statement of Claim read:

> My rights was violated from policing [sic] knowingly tampering with evidence that made it hard to have a fair trial and now my life and family not to mention my kids have been in ruins of not fully having the childhood. The officers removed evidence purposely to get a conviction and doing do violated my rights not to mention falsifying reports to match what they say happened.

(Doc. No. 1 at PageID #: 6-7). He did not specify the legal claims he was attempting to assert, nor did he indicate the relief he sought. The Court dismissed this case on February 14, 2025 for failing to meet the minimum pleading requirements of Federal Civil Procedure Rule 8. He filed a Notice of Appeal of that decision on March 3, 2025.

On March 4, 2025, the day after he filed his appeal in this case, Plaintiff filed a nearly identical Complaint with this Court against the same Defendants, indicating that he was refiling this case. *Granberry v. Haueter*, No. 4:25 CV 421 (N.D. Ohio Apr. 30, 2025)(Pearson, J.). He added a bit more information and a few citations to federal statutes, however, his pleading was once again very sparse. His Statement of Claim in that case read:

> My rights where [sic] violated by altering falsify and tampered with evidence 18 U.S.C. § 1519, 1983 18 U.S.C. § 1512 this made it hard for me to defend myself in Court so they deprived me of my rights Title 18 U.S.C. § 242.

*Id.* (Doc. No. 1 at PageID #: 5). He added:

> [H]e violated my right by removing evidence knowingly 18 U.S.C. § 1519 also violated 1983 my civil rights officer Haueter is also on the brady list known abuse of authority criminal behavior illegal search misconduct inventory procedures misuse of department records.

*Id.* (Doc. No. 1 at PageID #: 5). Finally, he stated, "The officers removed evidence purposely to get a conviction also falsifying reports to match there [sic] actions 2921.11 also my 4th Amendment was violated." *Id.* (Doc. No. 1 at PageID #: 5-6). This action was also dismissed

because Plaintiff's Complaint did not meet the minimum pleading requirements of Federal Civil Procedure Rule 8. The Court also stated that with the limited information available to the Court, it appeared that the Plaintiff was attempting to attack his conviction through a civil action. If he was attempting to seek damages, his claims were not cognizable unless Plaintiff demonstrated that his conviction had been reversed on direct appeal, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). If he was seeking release from confinement, his sole remedy is habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). The Court also dismissed any claims he was attempting to assert under 18 U.S.C. §§ 242, 1512 and 1519 because these federal criminal statutes do not provide a private right of action. That case was dismissed on April 30, 2025. He did not appeal that decision.

In addition to the cases Plaintiff filed against the officers who arrested him, Plaintiff brought two cases against the Columbiana County Prosecutor who obtained his conviction. He brought the first of these cases on December 20, 2024, just eleven days after he filed this case. *See Granberry v. Jones*, No. 4:24 CV 2229 (N.D. Ohio Feb. 27, 2025)(Pearson, J.). This case was dismissed, stating that the prosecutor is absolutely immune from civil suits. *Koubritit v. Convertino*, 93 F.3d 459, 467 (6th Cir. 2010). The Court also noted that he could not challenge his conviction in a civil rights action, citing *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). He appealed that decision on March 4, 2025. On the same day that he filed his appeal, he filed a second nearly identical action against the same Columbiana County Prosecutor. *Granberry v. Jones*, No. 4:25 CV 431 (N.D. Ohio June 20, 2025). Once again, the case was dismissed because the prosecutor is immune from damages, and Plaintiff cannot challenge his conviction in a civil rights action, *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). The Court also added that

*res judicata* barred this second, nearly identical action. *Granberry v. Jones*, No. 4:25 CV 431 (N.D. Ohio June 20, 2025). The Sixth Circuit Court of Appeals affirmed the decision of the District Court in *Granberry v. Jones*, No. 4:24 CV 2229 (N.D. Ohio Feb. 27, 2025)(Pearson, J.) on February 9, 2026.

Just one day after affirming the dismissal of *Granberry v. Jones*, No. 4:24 CV 2229 (N.D. Ohio Feb. 27, 2025)(Pearson, J.), the Sixth Circuit on February 10, 2026, determined that this Court should have *sua sponte* decided whether to allow Plaintiff to amend his Complaint to see if he could state a claim. Although the Sixth Circuit agreed that the action properly had been dismissed for failing to meet the minimum pleading standards; however, they remanded the case to this Court for a determination of whether to allow him to amend his Complaint to avoid dismissal under 28 U.S.C. § 1915(e). Although Plaintiff has had ample opportunities to litigate this matter, including in a refiling of this case with *Granberry v. Haueter*, No. 4:25 CV 421 (N.D. Ohio Apr. 30, 2025)(Pearson, J.), this Court granted him the opportunity to amend his Complaint to state a viable claim for relief.

The collection of documents Plaintiff filed in response to the Court's granting leave to amend, also fail set forth a viable claim. The only coherent statements that could be construed as legal claims are: (1) his stop and arrest were unlawful and conducted with excessive force; (2) that his vehicle was searched without probable cause; (3) that his cell phone was searched without a warrant; (4) that evidence was mishandled, undocumented and possibly concealed; (5) that he was denied full discovery in his criminal trial; (6) the officers' testimonies did not match body camera footage; and (7) the state presented evidence dated a year after his arrest. He states that these violations deprived him of a fair trial and undermined the integrity of the proceedings. He seeks reversal of his conviction and "appropriate relief." (Doc. No. 12-1 at PageID #: 47-48).

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III. Analysis

Plaintiff seeks reversal of his conviction in this civil rights action. As the Courts in this District have stated in Granberry's three other cases, he cannot attack his conviction in a civil rights action. Reversal of his conviction can only be obtained through a Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254.

Plaintiff also indicates he is seeking "appropriate relief." He does not specify what he means by this statement. To the extent he is attempting to seek damages, his claims are barred by the doctrine set forth by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). All of his claims directly challenge his conviction or the events that led to the collection of evidence that led to his conviction. If such claims were found to have merit, it would call into question the validity of his conviction. In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, Plaintiff must prove that the conviction or sentence has been reversed on direct appeal, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *Id.*. Plaintiff's conviction was upheld on appeal. His claims for damages would are not cognizable in a civil rights action.

Finally, any civil rights claims pertaining to his arrest are untimely. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995). Plaintiff claims his arrest took place on August 6, 2022. The Ohio Seventh District Court of Appeals, and the police reports state that he was arrested on October 6, 2022. This action originally was filed on December 9, 2024, beyond the statute of limitations for a civil rights action regardless of on which date the arrest occurred.

## IV. Conclusion

Accordingly, Plaintiff's Amended Complaint (Doc. No. 12-1) fails to state a viable claim for relief. This action once again is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

November 24, 2026
Date

*/s/ John R. Adams*
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.